IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03082-RBJ-NYW

LEONARD MARES,

    Plaintiff,

v.

FRAN LEPAGE,

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

This civil action comes before the court on Defendant Fran LePage's Motion to Dismiss. [#34, filed April 10, 2017]. The Motion was referred to the undersigned pursuant to the Order Referring Case dated February 7, 2017 [#13] and the memorandum dated April 11, 2017 [#35]. This court has reviewed the Motion and associated briefing, the case record, and the applicable case law, and for the reasons set forth below respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

**BACKGROUND**

Mr. Mares is in the custody of the Colorado Department of Corrections ("CDOC") and is currently incarcerated at the Crowley County Correctional Facility. *See* [#52, #53]. Mr. Mares initiated this action on December 14, 2016, by filing a *pro se* Prisoner Complaint pursuant to 42 U.S.C. § 1983 asserting violations of his First and Eighth Amendment rights. *See generally* [#1]. At that time, he was detained at the Pueblo County Detention Center. *See id.* The court granted Mr. Mares leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, [#8], and ordered him to

file an amended pleading. [#9]. On January 19, 2017, Mr. Mares filed an Amended Complaint again asserting that defendants subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights, and that Defendant LePage wrongfully denied his request to change his religion to Judaism and to receive kosher diet trays in violation of his rights under the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). [#10]. Plaintiff also alleged that Defendant LePage interfered with his constitutional right to access the courts, and a different CDOC officer refused to provide him with grievance forms. [*Id.*] In his Amended Complaint, Mr. Mares seeks both damages in the amount of $300,000 and injunctive relief from Defendant LePage [*id.* at 18], which this court interprets as Plaintiff proceeding against LePage in her individual and official capacities. On February 6, 2017, following the screening process undertaken pursuant to § 1915(e)(2), the court dismissed all claims other than those asserting violations of the First Amendment and RLUIPA and dismissed all defendants other than Defendant LePage. The court noted that the Eleventh Amendment precluded Plaintiff's claim for damages as to any defendant sued in his or her official capacity, but did not preclude Plaintiff's claim for injunctive relief. [#12 at 5 (citing *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002)]. The court then assigned the case to the Honorable R. Brooke Jackson and the undersigned Magistrate Judge. *See id.*

On April 10, 2017, Defendant LePage filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See* [#34]. Plaintiff filed a Response on May 3, 2017, [#39], and Defendant filed a Reply on May 17, 2017. [#42]. On May 2, 2017, this court held a Status Conference at which it set certain pre-trial dates and deadlines. *See* [#38]. Plaintiff thereafter filed a motion for appointment of counsel, which this court denied. *See* [#40, #44, #45]. On June 19, 2017, Mr.

Mares notified the court that he had been sentenced on June 2, 2017, and had been moved from the Pueblo County Detention Center. [#47]. On August 17, 2017, the court received notice that CDOC had moved Mr. Mares to the Crowley County Correctional Facility. [#53].

**STANDARD OF REVIEW**

**I.      Federal Rule of Civil Procedure 12(b)(1)**

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must dismiss a complaint if it lacks of subject matter jurisdiction. "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 1240, 1244, 163 L.Ed.2d 1097 (2006)).

The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). Mootness is an issue of subject matter jurisdiction. *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011).

## II. Federal Rule of Civil Procedure 12(b)(6)

Defendant LePage argues that Mr. Mares fails to state a cognizable claim. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. *Pro Se* Litigants

Mr. Mares is appearing *pro se*, and thus the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

Plaintiff alleges that he "kited the head of programs, Fran LePage, to change his religion to Jewish," that he "was denied his change of religion, [due] to the fact that the Pueblo County Detention Center has it[s] own rules on what religion you can be and how long you have to be a religion." [#10 at 9]. Plaintiff asserts that "all people have the same 1st amendment [right] to change their religion at any given time," and the "Pueblo County Jail has no authority to tell you what religion you can be and how long you have to be that religion." [*Id.* at 15].

Section 1983 of Title 42 of the United States Code allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). To assert a claim under section 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). "A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). The complaint must allege an affirmative link between the alleged

constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156-57 (10th Cir. 2001).

I. **Mootness**

The court first considers whether it has subject matter jurisdiction to consider the merits of this action. During the pendency of this lawsuit, Mr. Mares was sentenced in the State of Colorado, remanded to CDOC custody, and transferred away from Pueblo County Detention Center. [*See* #47]. Defendant LePage finished briefing her Motion to Dismiss approximately two weeks prior to Plaintiff's sentencing, and thus the Motion does not raise or address the applicability of mootness to Plaintiff's remaining claims. However, mootness implicates subject matter jurisdiction, and a court lacking jurisdiction "must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909. Accordingly, I consider *sua sponte* whether any of Plaintiff's contentions are moot.

Article III of the Constitution limits the jurisdiction of federal courts to considering only actual cases or controversies. *Kan. Jud. Review v. Stout,* 562 F.3d 1240, 1245 (10th Cir. 2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997)). The paradigmatic inquiry is "whether granting a present determination of the issues offered will have some effect in the real world," or whether it is now impossible for a court to grant effective relief. *Id.* (citing *Kan. Jud. Review*, 562 F.3d at 1246). *See also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011) (holding a claim for injunctive relief is moot when (1) the issues presented are no longer "live," or (2) the parties lack a legally cognizable interest in the outcome). With respect to a request for injunctive relief, the plaintiff's "susceptibility to

6

*continuing* injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974)). A prisoner's claim for injunctive relief is moot if he or she is no longer subjected to the conditions complained of in the pleading. *Id.* at 1028 (citing *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985)).

Mr. Mares' claim for prospective injunctive relief appears to be moot for two separate reasons. First, Mr. Mares is no longer at the Pueblo County Detention Center, and therefore, no longer subject to its rules regarding the designation of a particular religion and the provision of kosher meals. *See Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that once prisoner was released from the prison system, neither declaratory nor injunctive relief would have any effect on defendants' behavior); *Love v. Summit County,* 776 F.2d 908, 910 n. 4, 912 (10th Cir. 1985) (indicating that the general rule applies to a transfer between prisons). And Mr. Mares has not named as a defendant any CDOC official who has final policymaking authority for CDOC. *Cf. Abdulhaseeb*, 600 F.3d at 1311 (holding that RLUIPA claims were not moot despite prisoner's transfer between state correctional facilities because prisoner remained in state custody, subject to the state's correctional policies, and he had named as a defendant the director of the department of corrections who had authority to effect change in the department's policies). There is also no evidence in the record to suggest that Mr. Mares will be detained at Pueblo County Detention Center in the future. Second, it appears that even before his transfer, Defendant LePage granted Mr. Mares's request to change his religious designation to "Jewish," and may have authorized Mr. Mares to receive a kosher diet. [#39 at 4-5]. In either case, an

7

order enjoining Defendant LePage would have no real world effect and thus any official capacity claim seeking prospective injunctive relief is moot.

However, Plaintiff's claim for damages against Defendant LePage in her individual capacity is not moot because a judgment for damages may "alter the defendants' behavior by forcing them to pay an amount of money they otherwise would not have paid." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004). Thus this court addresses next Defendant LePage's argument that Plaintiff fails to state a cognizable claim for a violation of his First Amendment rights to free exercise of his religion.

## II. First Amendment Violation

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Inmates…retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citation omitted). The Tenth Circuit "recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers,* 286 F.3d 1179, 1185 (10th Cir. 2002) (reversing dismissal of First Amendment claims stemming from a denial of Jewish inmates' request for a kosher diet). These constitutional protections are not without reasonable limitations, and "a prison regulation imping[ing] on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone*, 482 U.S. at 348-49). This law applies equally to pre-trial detainees. *See, e.g., Mayo v. County of York*, 656 F. App'x 593, 596 (3d Cir. 2016); *Flower v. Mullet*, No. CIV-16-30-C, 2016 WL

3960910, at *3 (W.D. Okla. Jun. 27, 2016); *Robinson v. Roper*, No. CV 06-3817-TJH (PJW), 2010 WL 1407851, at *3 (C.D. Cal. Feb. 17, 2010).

The Tenth Circuit has adopted a two-step inquiry for district courts considering whether a prisoner-plaintiff has stated a constitutional violation based on a free exercise claim. The plaintiff must first show that "a prison regulation substantially burdened his sincerely-held religious beliefs." *Kay*, 500 F.3d at 1218 (internal quotation marks and ellipsis omitted). Prison-official defendants may then "identify the legitimate penological interests that justified the impinging conduct," at which point the court must apply a balancing test to determine the reasonableness of the regulation. *Id.* at 1218–19 (brackets omitted). Only the first of the two inquiries is relevant at the motion-to-dismiss stage. *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (citing *Kay*, 500 F.3d at 1219). With respect to the first inquiry, Plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Defendant LePage argues that the allegations supporting this claim are vague and conclusory, and that Plaintiff fails to allege "that his Jewish religious beliefs are sincere or how the Detention Center's limits on switching religions impermissibly burdens his ability to practice his chosen religion." [#34 at 5]. Additionally, Defendant LePage argues the allegations fall short of establishing the personal participation necessary to state a claim under § 1983, contending that Plaintiff acknowledges she denied his request "pursuant to restrictions put in place by the Detention Center," and that he does not argue she is responsible for the

"promulgation, creation, [or] implementation…[of] the restrictions or policies relating to religious diet changes." [*Id.* at 6].[1]

Mr. Mares does not address Defendant LePage's specific contentions in his response. *See* [#39]. Rather, he appears to represent that Defendant LePage ultimately changed his religious designation to Jewish. [#39 at 4-5 ("Fran LePage deprived Mr. Mares his change of religion and kosher diet until Mr. Mares kited Fran LePage with a case number on this civil suit against Fran LePage that is when she granted the change of religion…if Fran LePage did not violate[] Mr. Mares's rights, why would she approve Mr. Mares change of religion [sic] after the fact Mr. Mares gave her a case number that she is being sued.")]. He further asserts that Defendant LePage subsequently violated his "rights of kosher dietary laws by serving non-kosher food items," and he contends that he has "kited several times to Programs, who is Fran LePage, asking for Jewish Services and a Torah … a torah that he has asked for several times on a kite." [*Id.*] Defendant LePage reasserts her arguments on Reply, and additionally contends the claim fails because Plaintiff does "not explain why the non-kosher diet prevents [him] from practicing his religion or how the denial of a kosher tray otherwise coerces him into taking action that is contrary to his religious beliefs." [#42 at 2]. Defendant does not clarify whether she granted Plaintiff's request to change religions prior to his departure from Pueblo County Detention Center. *See id.*

Ordinarily, a court will not permit a party to further amend his operative pleading through a response to a dispositive motion. *See In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d

---

[1] Defendant LePage does not assert qualified immunity as a defense and this court does not *sua sponte* consider it. *See Williams*, 645 F. App'x at 696 n.5 (noting it is premature to consider how such a defense might affect a plaintiff's claims when the defendants did not raise the defense during briefing of a Rule 12(b)(6) motion).

1178, 1203 (D. Colo. 2004). In treating Mr. Mares's papers liberally, this court has considered the allegations he raises for the first time in his Response to the Motion to Dismiss, which include allegations that Defendant LePage failed to provide Plaintiff with a Torah, failed to contact a rabbi as requested by Plaintiff, and failed to prevent the service of non-kosher foods to Plaintiff. Even considering these new assertions, and viewing the facts in a light most favorable to Mr. Mares Plaintiff, I find that he fails to allege sufficient facts to sustain a First Amendment violation.

As an initial matter, I disagree with Defendant that Plaintiff is required to plead how a kosher diet is necessary to the practice of his religion. *See Williams*, 645 F. App'x at 704 ("Mr. Williams' First Amendment claim, like his RLUIPA claim, is not dependent on an allegation that a kosher diet is *necessary* to the practice of Islam") (citing *Kay*, 500 F.3d at 1219-20). Rather, "a prisoner's belief in religious dietary practices is constitutionally protected if the belief is 'genuine and sincere,'" … and, "as with a RLUIPA claim, investigation into 'the sincerity of [a First Amendment claimant's] beliefs [is] premature at this stage of the claim." *Id.* However, Plaintiff *is* required to plead that he has a sincerely-held religious belief, and that the prison regulation at issue substantially burdens that belief. *Kay,* 500 F.3d at 1218. Liberally viewed, Plaintiff's allegations represent that Defendant LePage acted pursuant to a Pueblo County Detention Center policy in denying his request to change his religious designation to Judiasm and in denying his request for kosher meals.[2] This court is willing, through the application of a

---

[2] This court acknowledges that it is giving quite a liberal construction to Plaintiff's allegations, considering Mr. Mares never actually states that *Fran LePage* denied his request, only that he submitted the request to her and the request was subsequently denied. However, the court during its initial screening used the same liberal characterization of Plaintiff's allegation. *See* [#12 at 9 ("Plaintiff contends in his third claim that Defendant Lapage violated his rights…by denying Plaintiff's request to change his religion to Jewish and to receive kosher diet trays.")]. Accordingly, this court will not deviate.

liberal construction, to infer that Plaintiff's religion is Judaism, but observes that Plaintiff never actually pleads that he is Jewish. Nor does he describe the nature of his faith or how his inability to obtain kosher meals burdens his faith. *Cf. Nichols v. Federal Bureau of Prisons*, No. 09–cv–00558–CMA–CBS, 2010 WL 3219998, at *9-10 (D. Colo. Aug. 12, 2010) (dismissing First Amendment claim and noting in part "Plaintiff does not state that Christianity requires him to consume *only* un-refined whole grains and living foods, and he does not contend that his meals are bereft of any such foods," and "has not alleged that he faces the Hobson choice present in *Abdulhaseeb v. Calbone* or that Defendants have infrequently provided him with the foods that are purportedly integral to Plaintiff's religious practice, as was the case in *Vashone–Caruso v. Zenon* [No.95-1578, 2005 WL 5957978 (D. Colo. Jul. 25, 2005)]"). Indeed, it is common knowledge that only a subset of individuals who subscribe to Judaism keep kosher. Had Mr. Mares included factual allegations in his Amended Complaint regarding his religious convictions and adherence to a kosher diet, the court would take those allegations as true and refrain from a credibility assessment as to whether Plaintiff's belief is sincerely held. However, with no allegations regarding his faith and how the inability to keep a kosher diet impacts his ability to worship, Plaintiff pleads only a desire to change his religion and maintain a different diet. The court concludes that the allegations as pled are insufficient to state a cognizable First Amendment violation.[3]

---

[3] Additionally, there may be an issue with the relief Mr. Mares seeks. Mr. Mares prays for "$300,000 in damages" from Ms. LePage [#10 at 18], but does not specify whether those are compensatory or punitive damages. The Prison Litigation Reform Act provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act []." 42 U.S.C. § 1997e(e). *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Section 1997e(e) does not bar recovery of punitive damages or declaratory or injunctive relief, but it does bar recovery of

## III. Religious Land Use and Institutionalized Persons Act

Turning to the sole remaining claim, the court notes that RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005). The statute limits the burdens that a government may place on a prisoner's free exercise rights:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). *See also Stewart v. Beach*, 701 F.3d 1322, 1333 (10th Cir. 2012). RLUIPA provides a cause of action against a government, and defines "government" in relevant part as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." 42 U.S.C. § 2000cc–5(4)(A)(i)–(iii). RLUIPA does not, however, provide a cause of action for individual-capacity claims. *Stewart*, 701 F.3d at 1335. *See also Williams v. Miller*, --- F. App'x ----, 2017 WL 2438128, at *1 n.5 (10th Cir. Jun. 6, 2017).

The court dismissed during the initial screening the claims for damages against any other defendant named in his or her official capacity, and this court concluded above that any claim

---

compensatory damages for failure to allege physical injury. *See id.* The court notes that Plaintiff does not allege that he suffered physical harm as a result of the alleged First Amendment

13

against Defendant LePage in her official capacity is moot. Accordingly, all that remains is a claim for damages under RLUIPA asserted against Defendant LePage in her individual capacity, and such a claim is clearly not cognizable under Tenth Circuit case law.

## CONCLUSION

For the foregoing reasons, this court **RECOMMENDS** that

1. Defendant Fran LePage's Motion to Dismiss [#34] be **GRANTED**; and

2. The Amended Complaint be **DISMISSED** without prejudice. [4]

DATED: August 31, 2017

BY THE COURT:

s/Nina Y. Wang
United States Magistrate Judge

---

violation, and therefore, compensatory damages would not be available to him. Of course, nominal damages remain available to vindicate a First Amendment violation. *Id.* at 869.

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).